IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| RAY ACUNA | § | |
| v. | § | CIVIL ACTION NO. 5:21cv14 |
| UTMB TDCJ MANAGED CARE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Ray Acuna, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. The Plaintiff's Complaint**

In his original complaint, Plaintiff named the University of Texas - Correctional Managed Care as the sole defendant. He stated that he is in pain but the medical department will not help him with Tylenol 3. He stated this medication works for him and he had it for about ten days, but then it was stopped and the medications he is now receiving do not help.

Plaintiff attached Step One grievance no. 2019056474 to his complaint (docket no. 1-2, p. 1). In this grievance, Plaintiff explained that on December 6, 2018, he was put in a transport van backwards and he thought the officers had tied him in, but they had not. After the van left the unit, the driver hit the brakes, causing Plaintiff - who is in a wheelchair - to flip over the back and hit the floor. The van returned to the unit and Plaintiff was put on a stretcher in a head brace. He was taken

to the emergency room at the local hospital, where he received an MRI and a nurse told him that nothing was broken.

However, Plaintiff states he was still hurting in his back and neck and all over his body. As of December 19, 2018, the date of the grievance, Plaintiff stated he has not received his wheelchair, gloves, cushion, reacher, or shower shoes back. The response to the grievance states that he has been afforded access to care regarding his adaptive care needs and complaints of pain.

In his Step Two appeal of this grievance, Plaintiff stated that his grievance concerned the blatant disregard for his safety and that the way he was placed in the van was an act of deliberate indifference. He said that the warden failed to train his officers and the grievance staff sent his grievance to the medical department for an "irrelevant answer." This grievance form does not contain a response nor any indication that it was received by the grievance department.

Plaintiff was ordered to file an amended complaint and sought an extension of time in which to do so. This extension was granted; however, no amended complaint has been filed. As such, Plaintiff's lawsuit is amenable to dismissal for failure to prosecute or to obey an order of the Court. Fed. R. Civ. P. 41(b).

### III. The Martinez Report

After review of the pleadings, however, the Court determined that a more complete review of prison records would be advantageous in determining whether or not Plaintiff sets out facially meritorious claims. The Court therefore ordered the prison officials to provide a Martinez Report, consisting of Plaintiff's medical, grievance, and classification records, along with any other records, incident reports, or investigations concerning his claims. *See* Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978); Parker v. Carpenter, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992). Plaintiff was provided with a copy of the Martinez Report, but did not file a response.

Plaintiff's medical records, contained within the Martinez Report, show on December 6, 2018, at about 12:30 p.m., the nurse was called to the back door of the unit for a wheelchair-bound patient in the unit van who was flipped to the floor out of the wheelchair. He was found lying on

the floor of the van complaining of neck and back pain.  A cervical collar was placed on him and he was put on a stretcher and taken to the ED.  His head was immobilized with rolled towels and tape.  Dr. Clayton was notified and orders were noted.  A report was called in to Palestine Regional Medical Center Hospital and an ambulance was sent, which transported Plaintiff to the hospital. (Docket no. 18-9, p. 285).

The nurse's notes from the hospital say Plaintiff arrived there at 2:44 p.m.  The diagnosis was listed as "fall from chair; sprain of ligaments of cervical spine, initial encounter; low back pain." His airway was patent with good air movement and Plaintiff was breathing without difficulty.  He was pink, warm, and dry, and his heart rate was within normal limits.  He was alert and oriented to person, place, and time, and was moving all extremities appropriately.  He complained of pain in his scalp.  (Docket no. 18-9, p. 287).

CT scans were taken of Plaintiff's lumbar spine (i.e. the lower portion), cervical spine (the upper portion), and face.  The scan of the lumbar spine showed no fractures, subluxation, or evidence of canal stenosis, although there were degenerative changes in the lower levels of the lumbar spine.  Neurologic impingement (i.e. a "pinched nerve" was possible.  (Docket no. 18-9, p. 296).

The CT scan of the face showed no visible facial bone fractures although there were some displaced fractures, diffuse sinusitis, and a right nasal septum deviation.  There were also erosions of the roots of the lower teeth, and a dental evaluation was recommended.  (Docket no. 18-9, p. 297).

The CT scan of the cervical spine showed no fracture, subluxation (i.e. dislocation), or evidence of canal stenosis (narrowing of the passageway housing the spinal cord), and no bone abnormality was evident.  (Docket no. 18-9, p. 299).

The next day, Plaintiff saw Nurse Barbara Jones complaining of pain, and she referred him to a provider, Physician's Assistant Janet Russell.  He saw P.A. Russell on December 10, and she prescribed Tylenol 3 for ten days, an antibiotic called minocycline, milk of magnesia to prevent

constipation, and an X-ray of the cervical spine.  She also ordered a cold-hot pack for 30 days. (Docket no. 18-9, p. 336).

The cervical spine X-ray showed that the vertebral bodies which could be seen were normal in height and in normal alignment.  The atlantodental space was normal and the prevertebral soft tissues were unremarkable.  No more than minimal degenerative changes were seen, and the dens (a bone protruding from the second cervical vertebra) appeared unremarkable.  The radiologist's impression was "no acute osseous abnormality is identified." (Docket no. 18-9, p. 340).

On December 17, 2018, Plaintiff was seen by P.A. Russell based on a sick call request in which he said he wanted his shower shoes, wheelchair, and helper back.  He asked about staying on Tylenol 3, but Russell told him that she was not sure they could do that.  She prescribed a steroid called prednisone and told him to stand in a warm shower and let it run on his back and neck. (Docket no. 18-9, p. 342).

On January 7, 2019, Plaintiff saw P.A. Russell for three sick call requests he had filed, two of  which asked for a renewal of Tylenol 3 and one asked to re-order his wheelchair, gloves, and long-handled reacher.  P.A. Russell requested a prescription for Tylenol 3 (designated as "non-formulary,") issued a pass for a soft cervical collar, and stated that she would send an email to ADS to see if they can send him what he had when he was there, since the items were lost when he was taken to the free world hospital.  (Docket no. 18-9, p. 347).  The request for Tylenol 3 was deferred on January 8, 2019, with the comment "please consider using acetaminophen or ibuprofen as appropriate per renal and hepatic status, and for further guidance, to consult the treatment of mild to moderate pain DMG on page 232 of the Correctional Managed Care formulary, 24th edition." (Docket no. 18-9, p. 348).

On January 14, 2019, Plaintiff submitted a sick call request again asking for Tylenol 3.  He saw P.A. Russell the next day, who told him that the request for Tylenol 3 had been denied by the pharmacy.  She increased his dosage of tegretol (an anti-seizure medication also used to control pain) and gave him a prescription for naprosyn, a non-steroidal anti-inflammatory pain medication.

However, on January 29, 2019, Plaintiff complained that the tegretol was making him sick. Russell discontinued the tegretol and started him on dilantin, another anti-seizure medication. (Docket no. 18-9, p. 364).

On April 17, 2019, a search of Plaintiff's cell turned up six tablets of Zoloft, two tablets of tegretol, five tablets of dilantin, two capsules of minocycline, and 21 tablets of atorvastatin. (Docket no. 18-9, p. 368). On May 2, 2019, Plaintiff saw P.A. Russell after filing a sick call request complaining of pain. She ordered a refill of naprosyn and an abdominal binder (back brace) for one year. (Docket no. 18-9, p. 372).

On June 3, 2019, P.A. Russell ordered more X-rays of Plaintiff's cervical, lumbar, and thoracic finer. Plaintiff's cervical spine and thoracic spine X-rays were normal, and the X-ray of his lumbar spine was normal except for a few scattered anterior osteophytes (commonly known as bone spurs). (Docket no. 18-9, p. 379). On June 24, 2019, Plaintiff saw P.A. Russell, who noted that the X-rays were basically within normal limits except for a few small osteophytes in the lumbar spine, but this is not where Plaintiff is hurting. She discontinued the naprosyn and prescribed a pain reliever called Mobic as well as a muscle relaxant called Robaxin. She also told Plaintiff to use moist heat on his neck four times a day, giving him a pass for an extra towel so he could do so. (Docket no. 18-9, pp. 381-85).

On July 3, 2019, Plaintiff saw P.A. Russell complaining of pain and his vision, but adamantly refusing to travel. When P.A. Russell asked how Plaintiff though he could get advanced treatment if he would not travel, Plaintiff relied "that is for you to figure out." She noted that he has refused transportation in an ambulance and told him that he would not get vision assistance if he refuses to go to the optometry department. Plaintiff also complained of having diarrhea, and P.A. Russell gave him a toilet paper pass for additional toilet paper weekly. (Docket no. 18-9, p. 389).

In a note dated July 14, 2019, P.A. Russell wrote that Plaintiff had stopped taking a medication called duloxetine (also known as cymbalta, an anti-depressant) because he said he found out it could damage the liver and he says he has hepatitis C. Russell stated that Plaintiff wants opiod

pain medications, although it has been explained to him many times that he cannot get them; they cannot treat him any other way if he is not willing to travel, and he is not willing. (Docket no. 18-9, p. 392).

On August 21, 2019, Plaintiff saw Nurse Practitioner Jammie Barker and reviewed the results from lab tests. She discontinued Mobic because of kidney insufficiency and stated that he would discontinue dilantin if the mental health department agreed to a prescription for cymbalta. (Docket no. 18-9, p. 404).

On August 28, 2019, Plaintiff was involved in an altercation with another prisoner. He was seen that day and denied any pain, and no abrasions were noted. (Docket no. 18-9, p. 409). However, Plaintiff was seen in the medical department by Nurse Shagayla Palmer a week later, on September 5, 2019, complaining that he had reinjured his back and saying he was taking Mobic for pain but it was not helping. He asked to be put on pain medication for severe pain, and the nurse referred to him to a provider. (Docket no. 18-9, p. 415).

Plaintiff saw N.P. Barker on September 9, 2019. He told her that he would not take the cymbalta, he wanted medications for hepatitis C, he wanted foam cleaner because "there are germs in the bathroom," and he needed extra toilet paper because he runs out. N.P. Barker noted that she would give him Motrin for pain but his X-rays were normal, she told him she did not give out hepatitis C medications, no one is getting foam cleaner but soap and water will kill the germs in the bathroom, and he does not qualify for extra toilet paper. She stopped the cymbalta and Mobic, ordered a prescription for 400 mg of Motrin, and ordered a complete blood count. (Docket no. 18-9, p. 416). Two days later, Plaintiff told Nurse Scott Nobie that he was not going to take the Motrin because of his hepatitis C, and it was changed to Tylenol. (Docket no. 18-9, p. 424).

On September 12, 2019, N.P. Barker submitted a referral for Plaintiff to the Ortho Spine department in Galveston, with transportation to be by wheelchair van. (Docket no. 18-10, p. 1). She also sent an email asking about Plaintiff's cushion, gloves, and reacher. On October 16, 2019, physical therapist Deborah Kendall responded that the items were on order and would be sent to the

6

medical department at Plaintiff's unit of assignment when the items are delivered. (Docket no. 18-10, p. 5).

On September 30, 2019, Plaintiff saw N.P. Barker, again complaining about Tylenol being bad for his liver and wanting something with which to clean the bathroom. N.P. Barker noted Plaintiff's X-rays from June were normal, Plaintiff did not want to go to the hospital in Galveston, Plaintiff was advised soap and water would do as well as foam cleaner, and there was no medical need for extra toilet paper. She discontinued the Tylenol at Plaintiff's request. (Docket no. 18-10, p. 11). On December 7, 2019, Plaintiff signed a refusal for the ortho spine clinic at Hospital Galveston. (Docket no. 18-10, p. 19).

On October 8, 2019, N.P. Barker renewed Plaintiff's cervical collar and order for an extra towel. (Docket no. 18-10, p. 22). On November 20, 2019, Plaintiff was issued a new wheelchair because he needed a larger one. (Docket no. 18-10, p. 31). His cervical collar was renewed on January 13, 2020. (Docket no. 18-10, p. 33).

On March 11, 2020, Plaintiff asked for Tylenol 3, but it was denied by N.P. Barker. (Docket no. 18-10, p. 51). On March 19, 2020, Plaintiff signed a refusal for transport to the Beto Unit for supplies. (Docket no. 18-10. p. 59). On May 26, 2020, and October 6, 2020, Plaintiff signed refusal for transportation to Hospital Galveston. (Docket no. 18-10, pp. 47, 71).

**V. Legal Standards and Analysis**

A. The Martinez Report

A Martinez Report is an administrative report submitted by state officials as a tool to assist the court in determining whether the claims are frivolous. Norton v. Dimazana, 122 F.3d 286, 292-93 (5th Cir. 1997), *citing* Cay v. Estelle, 789 F.2d 318, 323 n.4 (5th Cir. 1986) *and* Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). Plaintiff was provided with a copy of the Martinez Report and given an opportunity to file a response, but did not do so.

28 U.S.C. §1915A provides the court shall review complaints in civil actions wherein a prisoner seeks redress from a governmental entity or employee of a governmental entity and identify

cognizable claims or dismiss such portions of the complaint as are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.

The term "frivolous" means a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Whatley v. Coffin, 496 F.App'x 414, 2012 U.S. App. LEXIS 22894, 2012 WL 5419531 (5th Cir., November 7, 2012), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005).

B. Deliberate Indifference

Plaintiff asserts the prison officials have been deliberately indifferent to his serious medical needs. The Fifth Circuit has held deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show (1) objective exposure

to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. Petzold v. Rostollan, 946 F.3d 242, 249 (5th Cir. 2019).

Disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference. Id.; see also Gobert v. Caldwell, 463 F.3d 339, 345-46 (5th Cir. 2006), citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Claims of negligence, medical malpractice, or that the treatment provided has not been as successful as the plaintiff would have liked are insufficient to set forth constitutional violations. Gobert, 463 F.3d at 346; Norton, 122 F.3d at 291. Likewise, the fact medical care given is not the best that money can buy, or that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992).

The Fifth Circuit has held a prisoner who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a prisoner expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination. The prisoner committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id.

> Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the present case, Plaintiff's medical records plainly refute any claim of deliberate indifference to his serious medical needs. The Fifth Circuit has held medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Plaintiff's medical records show he has made repeated complaints to medical personnel and he has been repeatedly examined. He has been prescribed several different types of medication as well as medical devices such as cervical collars and braces. X-rays and CT scans have been done and he has been referred to a speciality clinic in Galveston, although he has refused these appointments.

Instead, the medical records show that Plaintiff has sought to dictate the course of his treatment, specifying the medications which he thinks are appropriate. Specifically, Plaintiff has repeatedly requested Tylenol 3, a non-formulary narcotic,[1] despite being told that it cannot be provided for him. Plaintiff does not have the right to override the medical providers and decide which medication he should get. Gordon v. Parker, civil action no. 5:17cv194, 2018 WL 5306652 (E.D.Tex., April 11, 2018), *Report adopted* 2018 WL 4204347 (E.D.Tex., September 4, 2018), *citing* Norton, 122 F.3d at 292.

The fact the pharmacist declined to approve a non-formulary medication does not itself show deliberate indifference to serious medical needs. Welch v. Revell, civil action no. 2:10cv109, 2011 U.S. Dist. LEXIS 65006, 2011 WL 2455715 (N.D.Tex., May 20, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 65013, 2011 WL 2455661 (N.D.Tex., June 20, 2011). Plaintiff's disagreement

---

[1]*See, e.g.,* Burgett v. Fontenot, civil action no. 4:10cv162, 2010 WL 4390433 (S.D.Tex., October 29, 2010) (noting that Tylenol 3 is a non-formulary narcotic).

10

with the pharmacist's refusal to approve this particular medication likewise does not demonstrate deliberate indifference.

The medical records also show Plaintiff has been referred multiple times to specialty clinics at the hospital in Galveston, but has refused to go. His refusals do not show deliberate indifference on the part of the medical providers who were trying to schedule medical appointments for him, notwithstanding Plaintiff's belief that the van ride would be arduous. *See generally* Fenlon v. Quarterman, 350 F.App'x 931, 2009 U.S. App. LEXIS 23614, 2009 WL 3444778 (5th Cir., October 26, 2009) (rejecting claim that prison bus rides amount to "torture" because "mere discomfort or inconvenience does not amount to an Eighth Amendment violation," *citing* Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989)).

More generally, Plaintiff contends that he is in "painful pain" and the medical department will not help him, and the medications he is given do not work. His claim of deliberate indifference is belied by the extensive medical record which shows Plaintiff has been seen and treated repeatedly. In Norton, the Fifth Circuit observed as follows:

> It is amply clear that prison officials were neither reckless nor deliberately indifferent to Norton's admittedly serious medical needs. In fact the record demonstrates that quite the opposite was true. There was extensive evidence in the record that prison officials afforded Norton a good deal of care and attention [footnote detailing the care provided to Norton omitted].
>
> The medical records indicate that Norton was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, gave him medical supplies, and changed his work status to reflect the seriousness of his problem. Norton's complaints about the treatment he has received, and the facts he alleges, simply do not state a claim for deliberate indifference.
>
> Norton also alleges that medical personnel should have attempted different diagnostic measure or alternative methods of treatment. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). The district court correctly dismissed this action as frivolous.

Norton, 122 F.3d at 291-92. In the same way, Plaintiff's medical records show he has been afforded extensive medical care and treatment. His disagreement with this treatment and his belief that it should have been more effective does not show that he has been the victim of deliberate indifference

to his serious medical needs. Plaintiff's claims should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

In addition, Plaintiff named only the University of Texas Medical Branch - Correctional Managed Care Department as a defendant in his case. He was ordered to file an amended complaint setting forth a short and plain statement of his claim, including naming the individual or individuals whom he wished to sue, but he did not do so. The University of Texas Medical Branch is an agency of the State of Texas, and as such enjoys sovereign immunity from suit. Lewis v. University of Texas Medical Branch at Galveston, 665 F.3d 625, 630 (5th Cir. 2011). Plaintiff's claim lacks an arguable basis in law for this reason as well.

## RECOMMENDATION

It is accordingly recommended the above-styled civil action be dismissed as frivolous with prejudice for purposes of proceeding *in forma pauperis*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See* Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error.  Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 24th day of January, 2022.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE